Oh, I'm sorry. Okay. If there are no questions, then. So the point I was making is, so the inquiry that the District Court was sending us back to develop after 2010 concerned the factual allegations, not the ultimate facts, because that's what's relevant to a duty-to-defend analysis. Well, the factual allegations, I mean, you're saying factual allegations that are not alleged in the complaint. Well, right. Hypothetical, for instance. Suppose the plaintiff's decedent was deposed as giving contentions on plaintiff's position and gave deposition testimony that said, I'm no longer contending that Dominic Olson participated in hazing. I am only saying that he came around after the fact and should have done something. Take that hypothetical. That deposition testimony would, the District Court may have found that if there was any kind of development like that, that would clarify that there was potentially a factual allegation in the case that didn't involve, that no longer brought the hazing exclusion of the policy into play, then a duty-to-defend potentially could be determined to exist. But that's the inquiry. It wasn't to determine what the ultimate facts were for purposes of a duty-to-defend. And that's, and the point of what was presented to the District Court in 2013 was, is that none of the factual allegations changed in the sense that the plaintiffs continued to have facts presented to present an allegation that Mr. Main and Mr. Olson were participants in the conduct that the plaintiffs alleged to be hazing. Can I just take you back a little bit, just conceptually? All right. If a court were to find that there were no duty to defend, then there also would be no duty to indemnify. Right. And the reason there's no duty to defend is because there are no allegations presented. Just generally. Got it. In a general case, no duty to defend, then there's also no duty to indemnify. Correct. But if a court found there was no duty to identify, it doesn't necessarily mean that there's no duty to defend. Correct. And I believe you raised this question, perhaps with Mr. Krause, even if there was a duty to defend in this case, there would be no facts found from which a duty to defend. I'm not even worried about that. I'm worried about, I read these opinions, maybe I'm missing it, as dealing with the duty to indemnify. I don't see a lot of language about duty to defend. It seems to me that we've got two issues to decide here, and we've only got a finding as to one. No, and again, there was findings as to both. The reason why the court was looking at facts that were being presented in depositions and otherwise was because it bore on, because under the SL case, it potentially bore on the fact of whether or not there was a duty to defend. Defense and indemnity was, duty to defend and duty to indemnify were both before the court in 2013, and they were both decided. Could you just tell me where that was decided? I'll leave you alone on that. The order indicates that our motion was granted, and our motion was to seek that there was no duty both to reimburse defense expense or the sum. You're inferring an actual finding into the judge's order, but in terms of what we're all searching for, things without findings of fact, there aren't any. Is that right? Well, there are no findings of fact regarding what actually happened, whether or not they actually hazed, because what the court did find in 2013 is that the factual allegations were that Mr. Olson was a participant in hazing, and that the factual allegations were that Mr. Main was a participant in hazing. Therefore, there was no duty to defend, because if those allegations were proven, had been proven in the underlying case, then there would be no duty to indemnify that claim because of the hazing. I agree. I just don't know where that is exactly. I think if you read the 2010 opinion in conjunction with the 2013 opinion, I think that's where it becomes clear. Is there ever a conclusion, as Judge Garth said, as to whether they're insured at all? Well, the district court in 2013 did not reach the question of whether or not Mr. Main and Mr. Olson were insured under the policy because the court found that. Isn't that the first question that any insurance lawyer or salesman or owner would want to know? Are they insured? Because if they're not insured, you can leave this courtroom. Are they insured? That's absolutely correct, Judge Garth. And that was one of the aspects of our motion, was that they are not insured under the policy as well. Why aren't they insured? Because we insured the national fraternity, Phi Kappa Tau fraternity. As one of my colleagues pointed out, the qualifying phrase under the policy for them to be insured is that the allegations are that they are insured only while acting within the scope of their duties on behalf of the named insured. But is there a filing anywhere? I practiced for years. I put all kinds of stuff in motions. Just because the motion is granted doesn't mean the court accepted every one of my arguments. Can you point us to a sentence that says they're insured? Oh, no. To be clear, the district court in 2013 did not reach, I believe there's even a footnote in the opinion, they didn't reach the question of whether or not they were insured. They didn't reach the primary question in deciding the case. That's what you said. They decided that they did, the district court decided the case on the basis of the hazing exclusion. Which, why in the heck would, well, the policy is, I think Judge Garth suggested, why are we worried about a policy of insurance unless we're talking about folks who are covered by that contract? It's like saying, well, you're not in breach of the contract. I'm not sure whether or not there was a contract. That's what we have here. You're preaching to the choir, of course, Judge McKee, but because our position before the district court in 2013 was that they are not insured because the alleged activities would not be within the scope of any duties that they had toward the national fraternity. Let me stop you. Let me stop you just a moment. You say that they were not within the scope of their duty. Therefore, they were not insured. Therefore, you're home free. The other side, your friends who are sitting on the other side of the table, say, oh, yes, they are insured. They were within the scope of their duty. And, therefore, you can't leave yet. And all I want to know is how do we find out from this point on, because of this conflict as to whether they're even insured, whether or not they were within the scope of their duty. What do we have to do in a court complex to find that out? Don't we have to remand this case to the district court and say, make findings based upon what you have. And if you have to have a hearing, have a hearing. Let's find out if these people are insured. Because if they're not insured, it answers the questions. It answers the questions of duty to defend. It answers the questions of indemnity. It answers the questions of hazing. It answers all those questions. Are they insured? Your Honor, the question is easy with respect to the duty to indemnify. Our position is they would have to remand. Forget the indemnity. Tell me what we have to do to find out whether or not they are insured. Sure. Don't we have to send it back for fact-finding as Judge Chigares and Judge Meek. No. Not with respect to duty to defend, because with duty to defend, you're looking at the factual allegations that the underlying plan presented and comparing it to the policy language to say, if the factual allegations were proven, would that potentially be indemnified under the policy? Our position is that the factual allegations in this case were, whether you look at the complaint or you look at anything else, are the factual allegations were that Mr. Olson and Mr. Main were alleged to have participated in conduct that they allege to be hazing. If they did, that's factual. I'm going to interrupt you again, because I don't buy your premise. For an insurance company to have a duty to defend, the individual has to be insured. Is that right? Yes, absolutely. If it's right, then isn't the first question, are these people insured? Forget about everything else, if you will. Don't you have to find out, if you're representing an insurance company, whether or not the complainant to the insurance company is insured? How do you do that? I suggest to you, at least I was a district court judge one time in the long distant past, that this sort of a thing is grist for the district court's mill. He has to find out whether or not they were operating within the scope of their duty. No? With respect to the duty to defend, they have to be. I know I'm trying to be careful. In answering the question, separate Olson and Maine. It seems to me that's very, very different, because ironically the argument that Maine is making to say that he wasn't participating in hazing is basically an argument that he wasn't acting within the scope of his duty or authority under the fraternity, i.e., he wasn't insured. In order to avoid the hazing argument, he's making himself not insured. To give credit to Mr. Jost, I don't think that's exactly what Mr. Jost is saying. He's, if I understand. He's a good Samaritan. He's trying to get the guy, give him some assistance. And I believe what Mr. Jost's argument is, is that he believes that's an argument that that act would be within the scope of a duty and that if he's alleged to do that wrong, he's insured for that. But the reason why that's not relevant for a duty to defend analysis is that he's also alleged to have been a participant in the hazing. And as the district court found in 2010, and as the district court again found in 2013, those allegations are part and parcel of each other. If he's alleged to have participated in, the alleged participation in hazing is definitely outside the scope of any duty that he allegedly had for a named insured. And the fact that there is also what I'll call a tag-along duty to render medical assistance, as the district court found, that flows from the hazing allegation. In fact, the count 11 of the complaint makes it, the underlying complaint makes it clear that it's the harm that was alleged to have been created from the event that was creating this duty to render medical assistance, as the plaintiff alleged. I feel we're going around in a circle, and I want to cut you off, Mr. Moore and Michael. Go ahead. Just one very practical question. The underlying litigation's done, right? Yes, it is. All that's left is just you guys and whether money changes hands, right? Correct. Right. That's the reason why we were waiting until 2013, was that after the 2010 ruling, the district court stayed the coverage action to, so pending the further developments in the underlying, so that when the motions were rebrought, any factual allegation changed, alleged to have changed, that could be, were there on a duty to defend or anything else, could be presented to the court at that point. Have you folks had any discussions with Mr. Taragosa on this case? We did, Your Honor. Okay, fine. I'd sure like to have you go visit him again, I'll tell you. Okay. Mr. Zegas, you deserve some time, I think. I'm sorry, I'm looking at the wrong case. Mr. Krauss deserves some time. Mr. Zegas hasn't even said anything yet, and I got you reserving some time. In response to the several questions concerning whether Dominic Olson, Clinton, Maine are insureds, Judge Garth's point's well taken, there is no finding. Would a remand in the hearing offer the opportunity for fact-finding? Absolutely. I respectfully submit that the record before this court on summary judgment is sufficient to determine that Dominic Olson wasn't insured. We begin with the allegations of the complaint, that he was acting within the scope of his duties, which is Appendix 447, and it then goes to the facts. The facts demonstrate through the affidavit. Try to stay in front of the mic a little bit. Sure, pardon me. The facts demonstrate through the affidavit of Michael Torney, the president, he defined what Dominic Olson's responsibilities, his duties were that night. He said he was the pledge master, that has a ceremonial function, and he said he's there to watch out over the pledges to make sure they don't drink too much. The allegations, including, unfortunately, underage kids who were served and apparently served routinely at events, including this one. But his responsibilities are facts before this court, and I would submit without further ado that there is enough to determine that Dominic Olson was acting within the scope of his duties, his authority as a fraternity member and pledge master sufficient to find that he is uninsured on this record. The final point goes to the duty to defend analysis and SL and the reference to the Polaroam decision in the briefing on behalf of Landmark. Our view is this. The allegations of the complaint did allege covered claims against both Olson and Main to the extent they said both were negligent. There was also an allegation phrased in an and-or that they participated in a hazing. By virtue of the uncertainty presented by whether that and-or hazing invoked the exclusion and barred coverage to these kids, the court in 2010 directed the parties to undertake discovery, stayed the federal action, directed them to go back to the underlying death case in the state court, participate in the discovery there. By the time we returned, the case had settled. As a result, the factual record is limited. There's primarily the statements conducted by the prosecutor's office following the event, the affidavit submitted by Mr. Olson and Mr. Torney. When we returned in 2013, both the duty to defend and indemnify are now before the court. I respectfully submit that both duties at that point are defined by the facts before the court. I'm not sure I understand the distinction. In summary judgment, there really are no facts before the court. I guess you're alleging or arguing, which is correct, that we take the facts alleged and let what's favorable to the non-movement, and those are the facts for our purposes. Correct. And the district court had facts as well as allegations demonstrating that Olson wasn't insured under this policy, and he was not excluded by the hazing exclusion. Thank you. Thank you. I would claim both sides for your argument. I would normally ask you to come up to the sidebar for this, but I don't want to exclude Judge Gart. I'd like to suggest that, and I've not talked to my colleagues about this. We may not agree, but I'd like to suggest that you, all three of you, speak with Mr. Torregosa about the case. We can put this on hold for a couple of weeks, not decide it, and pending the outcome of those discussions with Mr. Torregosa, if after we adjourn today you decide there's absolutely no use in talking to Mr. Torregosa, let us know. Just send a letter to us through the clerk's office, but it's helpful to have the letter penned by all three of you so that we don't know or don't assume where there's an obstacle if we don't want to know that. To the extent that there may be an opportunity here to reach an amicable settlement, it seems to me this is a case that cries out for some discussion and some agreement as opposed to us coming down with a ruling, especially on the basis of this record. It won't work to paste it as side cases, not to punt, but in any event, if you can let the clerk's office know the outcome of your discussions and then our incredible clerk, who's honoring herself with her presence back there today, Ms. Walden, will let us know when she gets the letter. Thank you very much.